JS - 6

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL AMBERS** | CASE NO. SACV 13-0196 AG (JPRx) |
| **Plaintiff,** | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| **BUY.COM, INC.** | |
| **Defendant.** | |

This putative class action concerns whether Internet retailers who sell and ship merchandise to customers using credit cards are governed by a California statute enacted in 1990 to protect consumer privacy and prevent fraud.

Plaintiff Michael Ambers ("Plaintiff") sued Buy.com, Inc. ("Defendant"), alleging that Defendant violated Section 1747.08 of the Song-Beverly Credit Card Act by requiring customers who make purchases on the Buy.com website (the "Website") to provide a telephone number. Defendant filed a Motion to Dismiss Plaintiff's Complaint ("Motion"), arguing that Section 1747.08 does not apply to such transactions. (Defendant's Motion to Dismiss Plaintiff's Complaint, Dkt. No. 9.) The Court agrees, and GRANTS the Motion.

## BACKGROUND

The following facts come from Plaintiff's Complaint, and for purposes of this Motion, the Court assumes them to be true.

Plaintiff alleges that Defendant owns and operates the Website. (Compl. ¶ 2.) In September 2012, Plaintiff purchased a set of DVDs on the Website using his credit card. (*Id.* ¶ 3.) To complete the purchase, Plaintiff was required to fill in a form on the Website that included Plaintiff's "name, home address, phone number, e-mail address, credit card number, credit card expiration date and the credit security code or CCID (credit card identification number)." (*Id.*) The Website would not allow Plaintiff to complete the purchase unless he provided his phone number. (*Id.*) Plaintiff alleges that Defendant retained the personal information collected from him. (*Id.*)

Plaintiff brings this putative class action on behalf of customers who were "required to provide their telephone number to BUY.COM as a condition of using their credit card for the purchase of MERCHANDISE from BUY.COM, including having to write this information on a pre-printed form." (*Id*. ¶ 9 (capital letters in original).)

## PRELIMINARY MATTERS

To support its Motion, Defendant requests that the Court take judicial notice of the complaint (the "Krescent Complaint") filed in June 2011 in the case of *David Krescent, et al. v. Apple, Inc.*, in Los Angeles Superior Court. (*See* Defendant's Request for Judicial Notice, Dkt. No. 10.) Plaintiff filed no opposition. Judicial notice of this item is appropriate because the document is lodged in the official records of the Los Angeles County Superior Court. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (holding that courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records"). The Court GRANTS Defendant's request to take judicial notice of the Krescent Complaint, but not for the truth of what it asserts.

**LEGAL STANDARD**

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (stating that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations")). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *id.*, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A]nalyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Sheppard v. David Evans and Associates*, 694 F.3d 1045, 1051 (9th Cir. Sept. 12, 2012). The Ninth Circuit also addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1204 (9th Cir. 2011). The *Starr* court held that allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . [and] plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* at 1216; *see also Moss v. U.S. Secret Serv.*, 10-36152, 2013 WL 674059, at *20 (9th Cir. Feb. 26, 2013) (holding that plaintiffs stated a claim because no

3

1 alternative explanation "render[ed] '*implausible*' the plaintiffs' claim of viewpoint
2 discrimination").

3 If the Court decides to dismiss a complaint, it must also decide whether to grant leave to
4 amend. "A district court may deny a plaintiff leave to amend if it determines that allegation of
5 other facts consistent with the challenged pleading could not possibly cure the deficiency . . . or
6 if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure
7 deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *see also*
8 *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) (holding that pleadings may be
9 dismissed without leave to amend if amendment "would be an exercise in futility").

10
11 **ANALYSIS**
12
13 On behalf of the putative class, Plaintiff asserts a single claim under Section 1747.08 of
14 the Song-Beverly Credit Card Act ("Song Beverly"). Cal. Civ. Code § 1747.08. Defendant's
15 principal argument is that Section 1747.08 does not apply to online transactions, based on the
16 California Supreme Court's recent decision in *Apple, Inc. v. Superior Court of Los Angeles*
17 *County*, 56 Cal.4th 128 (Feb. 4, 2013). The Court agrees. The Court thus does not reach
18 Defendant's other arguments for dismissal concerning the Commerce Clause, due process, and
19 exceptions under Song-Beverley for information "required for a special purpose." Cal. Civ.
20 Code § 1747.08(c)(4).

21
22 **1.    STATUTORY TEXT**
23
24 **"**In order to resolve [an] issue of statutory interpretation, [courts] look first to the plain
25 language of the statute, construing the provisions of the entire law, including its object and
26 policy, to ascertain the intent of Congress." *United States v. Real Prop. Located at 475 Martin*
27 *Lane, Beverly Hills, CA*, 545 F.3d 1134, 1141 (9th Cir. 2008) (quoting *States v. Mohrbacher*,
28 182 F.3d 1041, 1048 (9th Cir. 1999)). "If there is no ambiguity about the meaning of the

4

1 language, [courts] must apply the provision according to its terms without further judicial
2 construction." *Wilson v. Safeway Stores, Inc.*, 52 Cal. App. 4th 267, 272, 60 Cal. Rptr. 2d 532
3 (1997).
4      Section 1747.08 states in pertinent part:

6      (a) Except as provided in subdivision (c), no person, firm, partnership, association,
7      or corporation that accepts credit cards for the transaction of business shall do any
8      of the following:

10      (1) Request, or require as a condition to accepting the credit card as payment in
11      full or in part for goods or services, the cardholder to *write* any personal
12      identification information upon the credit card transaction form or otherwise.

14      (2) Request, or require as a condition to accepting the credit card as payment in
15      full or in part for goods or services, the cardholder to provide personal
16      identification information, which the person, firm, partnership, association, or
17      corporation accepting the credit card writes, causes to be *written*, or otherwise
18      records upon the credit card transaction form or otherwise.

20      (3) Utilize, in any credit card transaction, a credit card form which contains
21      *preprinted spaces* specifically designated for filling in any personal identification
22      information of the cardholder.

24      (b) For purposes of this section "personal identification information," means
25      information concerning the cardholder, other than information set forth on the
26      credit card, and including, but not limited to, the cardholder's address and
27      telephone number.

Cal. Civ. Code § 1747.08 (emphasis added).

The plain language of Section 1747.08 is not clear and unambiguous about whether it applies to online transactions. The text does not explicitly refer to online transactions, although this is not surprising because "former section 1747.8, section 1747.08's predecessor, was enacted in 1990, before the privatization of the Internet and almost a decade before online commercial transactions became widespread." *Apple*, 56 Cal. 4th at 136, 149 (internal citations omitted) (In 1990, "[s]uch technology was not even a twinkle in Steve Job's eye . . . ."). The multiple references to "writing" or "preprinted" forms in the statute suggest that the law applies only in "brick and mortar" transactions where a customer physically presents a credit card or similar method of payment to a retailer, which must then follow the statute in soliciting and recording the customer's personal information. *See* Cal. Civ. Code § 1747.08; *see Mehrens v. Redbox Automated Retail LLC*, 2:11-CV-02936-JHN-EX, 2012 WL 77220, at *2 (C.D. Cal. Jan. 6, 2012) ("This language suggests that 'pen and paper' transactions are contemplated[.]").

On the other hand, the statute does not explicitly limit its reach to "brick and mortar" locations, but instead refers generally to a "person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business." Cal. Civ. Code § 1747.08(a). And it is not unusual for courts, in appropriate circumstances, to apply statutes to new or changing technology. *See Apple*, 56 Cal. 4th at 137-39 (discussing cases that applied laws for periodicals and petition signatures to digital magazines and electronic signatures).

Because the plain language of the statute is not clear or ambiguous, the Court must consider the legislative intent behind the statute.

**2.     LEGISLATIVE INTENT**

The California Supreme Court recently gave a detailed analysis of the legislative intent of Section 1747.08 in *Apple*. 56 Cal. 4th at 139-41. The *Apple* Court explained that Section 1747.08 was enacted for two reasons: protecting consumers' privacy and preventing fraud.

"[T]he statute's overriding purpose was to 'protect the personal privacy of consumers who pay for transactions with credit cards.' and 'to provide robust consumer protections by prohibiting retailers from soliciting and recording information about the cardholder that is unnecessary to the credit card transaction." *Id.* at 139 (quoting *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal.4th 524, 534 (quoting Assem. Com. on Finance and Ins., Analysis of Assem. Bill No. 2920 (1989–1990 Reg. Sess.) as amended Mar. 19, 1990, p. 2))). Reports of the Assembly Committee on Finance and Insurance (the "Assembly Committee") state that the statute was enacted in response to two privacy concerns:

> First, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' phone numbers and addresses.

*Florez v. Linens 'N Things, Inc.*, 108 Cal. App. 4th 447, 452 (2003) (citing Cal. Assem. Com. on Finance and Ins., Background Information Request on Assembly Bill No. 2920. Stats. 1990, ch. 999, § 1 [A.B. No. 2920]).

But "the Legislature did not intend to achieve privacy protection without regard to exposing consumer and retailers to undue risk of fraud." *Id.* The statute was enacted only after the Legislature considered standard retail verification procedures, such as comparing the customer's signature to the signature on the credit card, and determined that these were sufficient to prevent fraud without collecting other types of personal information. *Id.* In 1991, the Legislature enacted a fraud-related provision now contained in Section 1747.08(d). *Id.* Described as a "clarifying, non-substantive provision," this subsection allows retailers to request the customer's identification in certain circumstances. *Id.*; Cal. Civ. Code § 1747.08(d). According to the *Apple* Court, this subsection further demonstrates "the Legislature's intent to permit retailers to use and even record personal information when necessary to combat fraud and

7

identity theft—objectives that not only protect retailers but also promote consumer privacy." 56 Cal. 4th at 140.

### 3. APPLICATION TO ONLINE TRANSACTIONS

Three cases have considered whether, in the context of these two legislative goals, Section 1747.08(d) applies to online transactions. All three have answered no.

In *Saulic v. Symantec Corp.*, the court confronted the question of whether the statute applied to online purchases of downloadable anti-virus computer software. 596 F. Supp. 2d 1323, 1325-26 (C.D. Cal. 2009). The Court concluded it did not.

> The purpose of the Act appears to be to protect consumer privacy in the course of a retail transaction, and this [Assembly Committee] analysis suggests the Act was specifically passed with a brick-and-mortar merchant environment in mind. While the use of computer technology is mentioned, the language does not suggest the Legislature considered online transactions or the perils of misappropriation of consumer credit information in an online environment where there is no ability to confirm the identity of the customer. . . . [O]nline transactions are not encompassed within the Act.

*Id.* at 1333, 1336.

In *Mehrens v. Redbox Automated Retail, LLC*, the court held that purchases from an automated movie rental machine, which are akin to online purchases, are not covered by Section 1747.08. 2:11-CV-02936-JHN-EX, 2012 WL 77220, at *3-4 (C.D. Cal. Jan. 6, 2012). Following *Saulic*, the *Mehrens* Court found that Section 1747.08 was designed to prohibit retailers in "brick-and-mortar transaction[s]" from collecting personal information that was unnecessary because the retailer could simply verify the customer's identity by examining an

8

identification card. *Id.* at *3.

> By contrast, collection of personal information in an online or unattended kiosk transaction may be the only means of verifying a customer's identity in order to prevent credit card fraud. Given the Act's focus on preventing unnecessary use of personal identification information, the language cannot reasonably be read to encompass online transactions, where recording such information is necessary for a legitimate purpose.

*Id.*

In *Apple*, a divided California Supreme Court agreed with the *Saulic*'s reasoning. The *Apple* Court held that Section 1747.08 did not apply to online purchases of downloadable files from Apple's iTunes store. 56 Cal. 4th at 150. Applying the statute to such purchases would undermine the Legislature's fraud prevention goals because, unlike "brick-and-mortar" retailers, online retailers would not be able to use the identification-checking safeguards in Section 1747.08(d). *Id.* at 141. The *Apple* Court was also influenced by the passage of the California Online Privacy Protection Act of 2003 ("COPPA"), which generally requires online services that collect personal information through the Internet to post their privacy policies on their websites.

> The enactment of COPPA suggests that when the Legislature intends to address online transactions, it does so unambiguously. In addition, the fact that COPPA enacts merely a disclosure regime suggests that the Legislature in 2003 sought to proceed cautiously in regulating online commerce or, at least for the time being, to strike a different policy balance than the Credit Card Act did in 1990 for the collection of personally identifiable information.

*Id.* at 147-49.

This Court agrees with general reasoning in *Apple*, *Saulic*, and *Mehrens*. But the cases leave open one question: Does Section 1747.08 apply to online purchases of merchandise that will be shipped or delivered to the customer? *Apple* dodged the issue, but suggested that Section 1747.08 might apply because shipment or delivery information could be used for fraud prevention:

> We have no occasion here to decide whether section 1747.08 applies to online transactions that do not involve electronically downloadable products or to any other transactions that do not involve in-person, face-to-face interaction between the customer and retailer. . . . [E]ven if the statute does apply to MOTO [mail order and telephone order] transactions, we do not think such transactions, which often involve 'shipping [or] delivery . . . of the purchased merchandise,' are readily likened to online purchases of electronically downloadable products with respect to possible means of preventing or detecting fraud.

*Id.* at 143. *Saulic*, on the other hand, categorically held that "online transactions are not encompassed within the Act." 596 F. Supp. 2d at 1336. But *Saulic* involved the purchase of downloadable software that did not require shipping and the Court did not analyze circumstances involving shipments of merchandise. *Id.* at 1326. In *Mehrens*, the transactions at issue were DVD rentals at automated machines, so shipping was also unnecessary. 2012 WL 77220, at *1. Unlike *Apple*, *Saulic*, and *Mehrens*, the transaction in this case involves the online purchase of merchandise that will be shipped, so the Court must engage in an additional analysis.

Plaintiff interprets *Apple* as creating a "some mechanism" standard that applies Section 1747.08 whenever there is "some mechanism" to verify the customer's identity other than the credit card itself. (*See* Plaintiff's Opposition to Motion to Dismiss Case, Dkt. No. 15, at 8:68.) "Here," Plaintiff argues, "that mechanism was [Plaintiff] Ambers' home address, which [Defendant] Buy had the right to acquire because it has to ship Ambers' dvd to him." (*Id.* at 8:8-9.) Thus, under Plaintiff's approach it was *not* phone numbers. It may be true, in this case, that

Defendant could have used Plaintiff's shipping address to confirm his identity by matching it with the billing address for the credit card.  But it is equally likely that Plaintiff's shipping address wouldn't have worked as an anti-fraud mechanism.  A person who buys merchandise online may direct shipments to innumerable addresses unconnected with the billing addresses for the person's credit card.  These might include work addresses, post-office addresses, or addresses of temporary residences used by college students, employees on job-related trips, or others.  And online customers commonly send gifts to friends and relatives at addresses other than the customer's billing address.

These possibilities highlight the problem with assuming that the shipping address a customer enters online to complete an order is equivalent to the "brick and mortar" retailer's ability to ask for a photo identification card or another "reasonable forms of positive identification" as "a condition to accepting the credit card" under Section 1747.08(d).  As noted in *Apple*, Section 1747.08(d) clearly reflects the Legislature's intent to give retailers a way to verify that the person making the credit card purchase is authorized to do so.  56 Cal.4th at 143.  No verification method is bulletproof, but a shipping address falls short of fulfilling the Legislative intent of providing an anti-fraud safeguard for retailers.

The Court finds that Section 1747.08 does not apply to the online retail purchases in this case.  Defendant's Motion is GRANTED.  Because Section 1747.08 does not apply to Plaintiff's claims as a matter of law, the Court denies Plaintiff leave to amend his Complaint.  *See Telesaurus*, 623 F.3d at 1003.

**DISPOSITION**

The Motion is GRANTED.  Plaintiff's Complaint is DISMISSED without leave to amend.  Defendant shall submit a short judgment, without factual recitals and reflecting that judgment is entered against Plaintiff and for Defendant.

1 IT IS SO ORDERED.

2 DATED: April 30, 2013

4 _____
Andrew J. Guilford
5 United States District Judge